**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| TYSHON EDWARDS,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF TRENTON, *et al.*,<br><br>　　　　　　Defendants. | Civil Action No. 20-13552 (DEA)<br><br>**MEMORANDUM ORDER** |

**ARPERT, United States Magistrate Judge**

This matter comes before the Court upon Plaintiff Tyshon Edwards' ("Plaintiff") Motion for Approval of Settlement Agreement and for Entry of Consent Judgment ("Motion to Approve") (ECF No. 62), and Third-Party Insurer Certain Underwriters of Lloyd's London's ("Underwriters") Motion to Intervene in this action (ECF No. 67). Underwriters opposed Plaintiff's Motion to Approve (ECF No. 76), and Defendant City of Trenton ("Trenton") (ECF No. 70) and Plaintiff (ECF No. 71) opposed Underwriters' Motion to Intervene. All oppositions were replied to. (ECF Nos. 72, 77.) Oral argument was heard on both motions on February 28, 2024. After consideration of the parties' submissions and the argument of counsel, and for the reasons outlined below, the Court grants Plaintiff's Motion to Approve and denies Underwriters' Motion to Intervene.

As all parties are intimately familiar with the facts underlying this matter, the Court recites only those facts necessary to resolve the instant motions. On January 26, 2024, Plaintiff and Trenton entered into a Settlement Agreement. (ECF No. 62-1.) Under the terms of the Settlement

Agreement, Trenton agreed to the entry of a Consent Judgment against it wherein judgment would be entered in favor of Plaintiff in the amount of $5,000,000. (*Id.*) The Settlement Agreement contemplates that $500,000 of this sum will be paid by Trenton with an assignment to Plaintiff of all of Trenton's rights against Underwriters including, but not limited to, any rights to collect upon the Consent Judgment. (*See* ECF No. 62-1.)[1]

The same day that the Settlement Agreement was signed by Plaintiff and Trenton, Plaintiff filed its Motion for Approval of Settlement Agreement and for Entry of the Consent Judgment. (ECF No. 62.)  On February 9, 2024, Underwriters filed a Motion to Intervene as a matter of right contending that: (1) Underwriters is an interested party under Federal Rule of Civil Procedure 24(a)(2) because "it has a cognizable legal interest in the instant matter that is threatened by the proposed settlement"; and (2) that the existing parties do not represent Underwriters' interest in the underlying litigation. (ECF No. 68.) Plaintiff contends in opposition, in pertinent part, that: (1) Underwriters' interests in this action are contingent, and therefore, intervention is not appropriate; (2) Underwriters' motion is untimely; and (3) Underwriters' motion fails to comply with Rule 24(c). (ECF No. 71.)

The Court agrees with Plaintiff and Trenton, and the Court's analysis of this point can be brief. As an initial matter, Underwriters' Motion to Intervene is procedurally deficient. Rule 24(c) requires that "[a] motion to intervene must . . . state the grounds for intervention *and be accompanied by a pleading that sets out the claim or defense for which intervention is sought*." FED. R. CIV. P. 24(C) (emphasis added); *see also* Local Civil Rule 7.1(f)(1) ("[U]pon filing of a

---

[1] The Settlement Agreement provides that Trenton's Public Entity Package Policy underwritten by Underwriters (the "Policy") outlines that the limit of liability for Law Enforcement Liability Coverage "is $3,000,000.00 each Occurrence and $6,000,000.00 Annual Aggregate of Liability, subject to a $500,000.00 Self Insured Retention." (ECF No. 62-1.)

motion for leave to file a complaint in intervention, the moving party shall attach to the motion a copy of the proposed pleading . . .). Underwriters' did not attach a proposed pleading to their Motion to Intervene. As such, Underwriters' Motion is procedurally deficient, which is sufficient reason alone to deny the Motion to Intervene. *Transource Pa., LLC v. Dutrieuille*, No. 21-2567, 2022 WL 2235466, at *3 (3d Cir. 2022) (finding that it is within the District Court's discretion to deny a third-party's motion to  intervene under Rule 24(c) because the motion was not accompanied by a pleading).

More importantly, Underwriters' Motion to Intervene is also substantively flawed. In the Third Circuit:

> a litigant seeking intervention as of right under Rule 24(a)(2) must establish 1) a timely application for leave to intervene, 2) a sufficient interest in the underlying litigation, 3) a threat that the interest will be impaired or affected by the disposition of the underlying action, and 4) that the existing parties to the action do not adequately represent the prospective intervenor's interests.

*Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 221 (3d Cir. 2005) (collecting cases). "Each requirement 'must be met to intervene as of right'" *Islamic Soc'y of Basking Ridge v. Township of Bernards*, 681 F. App'x 110, 112 (3d Cir. 2017) (quoting *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995)).

Here, Underwriters fail to show, at a minimum, that they have a sufficient interest in the underlying litigation to justify intervention. First, Underwriters only have an economic interest in this litigation, i.e., mitigating any judgment they may have to pay if the Policy is later found to obligate Underwriters to indemnify Trenton. Notably, "a mere economic interest in the outcome in

the litigation is insufficient to support a motion to intervene.[2]" *Sullivan v. Borough of Atlantic Highlands*, No. 19-19510, 2021 WL 915210, at \*2 (D.N.J. Mar. 10, 2021) (quoting *Mountain* Top, 72 F.3d at 366). Second, Underwriters only have a *contingent* economic interest in this matter, which further removes Underwriters' interest from that which can justify intervention. *Castracane-Sedlac v. Mason*, No. 20-6080, 2021 WL 4710513, at \*3 (D.N.J. Oct. 8, 2021) (collecting cases). This second point warrants further explanation.

Critically, Underwriters maintains that it has neither denied nor conceded coverage under the Policy. (*See* Underwriters' Moving Br. 6.) Instead, Underwriters insists on reserving its right to deny coverage without expressly doing so although Underwriters has made clear that coverage under the Policy is likely to be denied. (*See* Trenton's Ex. C, Coverage Position Letter, ECF No. 70-1 (outlining that Underwriters reserves its rights to deny coverage under several of the Policy's provisions and making clear that Underwriters has no duty to defend in this matter, only a potential duty to indemnify Trenton if Trenton proves to be covered by the Policy); Trenton Ex. B, Koury Email, ECF No. 70-1 (providing an email from David Koury, an Underwriters representative, noting that Underwriters' January 13, 2023 coverage position letter confirmed that "Underwriters

---

[2] The Court recognizes Underwriters' contention that "the proposed settlement implicates a specific fund," which if shown to be true, is an exception to the general rule that an economic interest is insufficient to justify intervention. (Underwriters' Moving Br. 5-6, ECF No. 68.) Specifically, Underwriters contends that "the indemnity loss reserve payable by Underwriters for covered losses incurred by [Trenton]" qualifies as a fund. (*Id.*). This argument functionally maintains that "the insurance policy covering [Trenton] is a fund" that circumvents the general rule that economic interests are insufficient for an insurer to intervene. (*Id.*) Underwriters provides no case law to support this position other than the case law laying out the "fund exception" generally. This may be because relevant case law actually suggests the opposite conclusion, i.e., that insurance policies are not funds within the meaning of the exception. *See Treesdale*, 419 F.3d at 221-22 (explaining in detail why an appellant insurer's contention that the insurer's Umbrella Excess Liability Policies constituted a "specific" fund is rejected and distinguishing *Mountain Top*, the case Underwriters cites to set forth its contention, from facts similar to those in front of this Court).

do not believe coverage exists for this matter").) Whether Underwriters denied coverage or reserved its right to deny such coverage is inapposite because either outcome results in a contingent interest.

To be clear, Underwriters may have a vested interest in this litigation, as opposed to a contingent interest, only if Underwriters were to concede coverage.[3] *See CPL (Linwood), LLC v. Rossetti Roofing, Inc.*, No. 09-6228, 2010 WL 11570374, at *2 (D.N.J. July 28, 2010) (citing *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 638 (1st Cir. 1989)). This is because in that circumstance, Underwriters would be certainly accountable to indemnify Trenton up to the Policy's coverage limit upon settlement in this litigation, and therefore, Underwriters would be the truly interested party in any settlement discussion. (*See id.*) Here, however, coverage is at best uncertain[4] and at worst denied. If Underwriters were to have denied coverage, Underwriters would have no interest in this litigation because by their own logic they would not be liable for any settlement Trenton enters into. To the extent Trenton's coverage is uncertain under the Policy because Underwriters reserved a right to deny coverage, Underwriters can only have a contingent interest because Underwriters' interest is subject to a condition precedent: whether the Policy will ultimately cover Trenton's liabilities.[5] *See Castracane*, 2021 WL 4710513, at *3 (crediting the Middle District of Pennsylvania's conclusion that an insurer's interest in a lawsuit that does not

---

[3] Even if this interest was vested, the Court again notes that intervention still would likely not be appropriate because Underwriters appears to only have an economic interest in this matter.

[4] The Court notes that several cases support the Court's finding that the reservation of the right to deny coverage under an insurance policy is a contingent interest for purposes of intervention. *See, e.g.*, *CPL (Linwood)*, 2010 WL 11570374, at *2; *Dingwell*, 884 F.2d at 638; *Restor-A-Dent Dental Lab'ys v. Certified Alloy Prods., Inc.*, 725 F.2d 871, 874-76 (2d Cir. 1984); *Castracane-Sedlac*, 2021 WL 4710513, at *3.

[5] In fact, an interest subject to a condition precedent (such as whether Trenton will be covered under the Policy) is, by definition, a contingent interest. *Contingent*, MERRIAM-WEBSTER DICTIONARY (2024) (defining "contingent" as "dependent on or conditioned by something else").

concern "the respective rights and obligations of an insured and his insurer [] under [an] insurance policy" is necessarily contingent because any interest the insured has is "contingent on the resolution of the coverage issue" (citing *Carey v. City of Wilkes-Barre*, No. 05-2093, 2008 WL 11492790, at *2 (M.D. Pa. Nov. 10, 2008)).

In sum, whether the Court were to credit Plaintiff's contention that Underwriters denied coverage or Underwriters' contention that coverage was not denied but Underwriters simply reserved its right to deny coverage, the same holds true: Underwriters has only shown a contingent interest in this litigation. Accordingly, Underwriter's Motion to Intervene must be denied both because Underwriters have only shown: (1) an economic interest in this litigation, i.e., limiting the amount of money they have to pay if Trenton is later found to be covered by the Policy; and (2) a contingent interest in this litigation, i.e., an interest that is contingent on a separate finding that the Policy covers Trenton.[6]

With Underwriters' Motion to Intervene considered and denied, the Court briefly turns to Plaintiff's Motion for Approval of Settlement Agreement and for Entry of Consent Judgment. Plaintiff and Trenton entered into the Settlement Agreement based on the holding in *Griggs v. Bertram*. 443 A.2d 163 (N.J. 1982). Under *Griggs*, where two parties agree to settlement terms

---

[6] The Court also notes that the timeliness of Underwriters' Motion is suspect. While Underwriters insists that it was caught completely off-guard by the $5,000,000 settlement between Plaintiff and Trenton, and while it is true that $5,000,000 may have been a greater amount than Underwriters believed was at issue given prior settlement discussions, the Court finds that Underwriters is likely responsible for being taken by surprise in this case. Specifically, the Court finds it significant that Underwriters had a representative present during settlement discussions in this case and that Underwriters' representative remained completely disinterested in engaging with the Court or the parties in resolving this matter. As such, the Court is unpersuaded that Underwriters could not have known a $5,000,000 settlement amount could be in play because there is no indication that Underwriters took sufficient interest to fairly say that it truly was not aware that a $5,000,000 settlement might occur.

that may be enforceable against an insurer, the parties must show the Court that: (1) the parties settlement is reasonable; and (2) the parties engaged in good faith. (*Id.*)

This Court is well familiar with this case having presided over multiple appearances, conferences, and disputes since its inception. The Court has also engaged counsel on numerous occasions in settlement dialog during which Plaintiff's counsel repeatedly presented evidence of "comparator" cases, damages awards in other similar cases, and average per-diem rates based on similar circumstances. The proposed Consent Judgment falls easily within that realm. It is also noteworthy that the proposed $5,000,000 judgment was the result of a negotiation between Plaintiff and Trenton which significantly reduced the amount initially sought by Plaintiff.

For these reasons, the Court is persuaded that a $5,000,000 settlement is reasonable and consistent with other similar cases in this State. Further, the Court has no reason to believe, nor is there any evidence that, the parties acted with ill intentions despite Underwriters' suggestions to the contrary. (*Cf.* Pl.'s Moving Br. 5, ECF No. 62 (detailing how Plaintiff ascertained the reasonableness of the $5,000,000 award in this case and identifying at least one similar local case that resulted in a higher award).) Accordingly, and for the reasons outlined above and discussed on the record,

IT IS on this __29th__ day of February 2024 **ORDERED** as follows:

1.      Underwriters' Motion to Intervene (ECF No. 67) is **DENIED**.

2.      Plaintiff's Motion for Approval of Settlement Agreement and for Entry of Consent Judgment (ECF No. 62) is **GRANTED**.

_____
**DOUGLAS E. ARPERT**
**UNITED STATES MAGISTRATE JUDGE**